Eastern District of Kentucky
FILED

JUN 04 2026

AT LEXINGTON
Robert R. Carr
CLERK U.S. DISTRICT COURT

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**ASHLAND**

**UNITED STATES OF AMERICA**

**V.** **INDICTMENT NO.** 26-33-DLB-EBA

**TIMMY G. ROBINSON, JR.**

* * * * *

**THE GRAND JURY CHARGES:**

## BACKGROUND

At all relevant times:

1. **TIMMY G. ROBINSON, JR.** was a resident of Louisa, Kentucky and was a licensed attorney in the Commonwealth of Kentucky.

2. **ROBINSON** owned Addiction Recovery Care, LLC (ARC), and functioned as its Chief Executive Officer.

3. ARC was a behavioral health and substance abuse treatment provider with residential facilities and outpatient facilities in the Eastern District of Kentucky.

4. The Internal Revenue Service (IRS) offered a refundable tax credit called an Employee Retention Credit (ERC) to certain eligible businesses who paid qualified wages to some or all of its employees between March 12, 2020 and January 1, 2022, and who were impacted in specified ways by the COVID-19 pandemic. Eligible employers could claim the

ERC on an adjusted employment tax return for one or more calendar year quarters within those dates.

**COUNT 1**
**18 U.S.C. § 1343**

5. The allegations set forth in paragraphs 1-4 of this Indictment are realleged and incorporated by reference as if fully set forth herein.

6. Between on or about October 1, 2025, through on or about January 12, 2026, in Lawrence County, in the Eastern District of Kentucky, and elsewhere,

**TIMMY G. ROBINSON, JR.**

knowingly, and with intent to defraud, devised and intended to devise a scheme to defraud and obtain money by means of materially false and fraudulent pretenses, representations, and promises, and concealment of material facts.

**MANNER AND MEANS**

7. In or around August 2023, ARC sought an ERC from the IRS in the amount of $3,319,220, based on qualified employee wages it paid in the first quarter of 2021 (the "Q1 ERC").

8. In or around April 2025, ARC sought an ERC from the IRS in the amount of $3,589,252, based on qualified employee wages it paid in the second quarter of 2021 (the "Q2 ERC").

9. On or about July 18, 2025, **ROBINSON** caused ARC to sell all of its rights, title, and interest in the Q1 ERC to Buyer 1. Under the terms of the sale agreement, Buyer 1 would pay ARC $2,721,761, and in exchange, ARC would cause the $3,319,220 Q1 ERC to

be transferred to Buyer 1 after it was issued by the IRS. **ROBINSON** signed the sale agreement on behalf of ARC.

10. On or about July 22, 2025, Buyer 1 wired $2,721,761 to an ARC bank account.

11. The sale agreement with Buyer 1 required ARC to effectuate the release of a third-party lien on the Q1 ERC within sixty days of July 22, 2025. If ARC failed to do so, Buyer 1 could force ARC to repay the purchase price of the Q1 ERC.

12. On or about September 24, 2025, **ROBINSON** executed an amendment to the sale agreement on behalf of ARC, pursuant to which ARC transferred all of its rights, title, and interest in the Q2 ERC to Buyer 1, in exchange for a thirty-day extension of the lien release deadline described above in paragraph 12.

13. Thereafter, in order to unlawfully enrich himself and ARC, **ROBINSON** devised a scheme to sell the Q1 ERC and Q2 ERC to a second buyer.

14. On or about October 27, 2025, **ROBINSON** falsely represented to Broker 1 that the Q1 ERC and Q2 ERC were available to purchase from ARC. **ROBINSON** concealed the prior transactions of the same ERCs with Buyer 1.

15. Throughout a due diligence process conducted by Broker 1 between October 27, 2025 and November 12, 2025, **ROBINSON** continued to falsely represent that the Q1 ERC and Q2 ERC were available for purchase from ARC, and continued to conceal that ARC had already sold the same assets to Buyer 1.

16. On or about November 12, 2025, **ROBINSON** executed a sale agreement with Buyer 2, pursuant to which Buyer 2 agreed to pay ARC $2,987,298, in exchange for ARC remitting the Q1 ERC to Buyer 2 upon receipt from the IRS. In the sale agreement,

**ROBINSON** falsely represented that no portion of the Q1 ERC had been previously sold, transferred, or subject to any lien or encumbrance. On or about November 12, 2025, **ROBINSON** electronically signed the sale agreement and caused it to be transmitted via interstate wire communication to Broker 1.

17. On or about November 12, 2025, **ROBINSON** executed a sale agreement with Buyer 2, pursuant to which Buyer 2 agreed to pay ARC $3,230,326, in exchange for ARC remitting the Q2 ERC to Buyer 2 upon receipt from the IRS. In the sale agreement, **ROBINSON** falsely represented that no portion of the Q2 ERC had been previously sold, transferred, or subject to any lien or encumbrance. On or about November 12, 2025, **ROBINSON** electronically signed the sale agreement and caused it to be transmitted via interstate wire communication to Broker 1.

18. On or about November 12, 2025, Buyer 2 wired an initial purchase payment of $4,739,843.18 for the Q1 ERC and Q2 ERC to an ARC bank account at Community Trust Bank ending in *7593.

19. On December 2, 2025, ARC received the Q1 ERC and Q2 ERC from the IRS. **ROBINSON** directed ARC not to convey these funds to either Buyer 1 or Buyer 2. At **ROBINSON'S** direction, ARC spent the ERC funds on other operational costs and debt obligations.

**EXECUTION OF THE SCHEME**

20. On or about the date listed below, in Lawrence County, in the Eastern District of Kentucky, and elsewhere,

**TIMMY G. ROBINSON, JR.,**

for the purpose of executing the scheme described above, knowingly caused to be transmitted, by means of wire communication in interstate commerce, the following writings and signals:

| Count | Date | Wire Transmission |
|---|---|---|
| 1 | 11/12/2025 | Signed sale agreements with Buyer 2 falsely representing that the Q1 ERC and Q2 ERC had not been sold previously. |

In violation of 18 U.S.C. § 1343.

**COUNTS 2-3**
**18 U.S.C. § 1957**

21. The allegations set forth in paragraphs 1-20 of this Indictment are realleged and incorporated by reference as if fully set forth herein.

22. On or about the dates listed below, in Lawrence County, in the Eastern District of Kentucky, and elsewhere,

**TIMMY G. ROBINSON, JR.**

knowingly engaged, and attempted to engage, in a monetary transaction in criminally derived property of a value greater than $10,000 and that was derived from specified unlawful activity, that is, wire fraud in violation of 18 U.S.C. § 1343, by authorizing the following:

| Count | Date | Amount | Description |
|---|---|---|---|
| 2 | 11/17/2025 | $325,000 | Wire payment to ARC Account x0157 at Truist Bank |

| | | | |
|---|---|---|---|
| 3 | 11/22/2025 | $997,500 | Wire payment to Neubert, Pepe & Monteith, P.C. |

Each in violation of 18 U.S.C. § 1957.

**FORFEITURE ALLEGATION**
**18 U.S.C. § 981(a)(1)(C)**
**18 U.S.C. § 982(a)(1)**
**28 U.S.C. § 2461**

1. By virtue of the commission of the offense alleged in Count 1 of the Indictment, **TIMMY G. ROBINSON, JR.** shall forfeit to the United States any and all property, real or personal, which constitutes or is derived from proceeds traceable to the violation of 18 U.S.C. § 1343. Any and all interest that **TIMMY G. ROBINSON, JR.** has in this property is vested in and forfeited to the United States pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461.

2. By virtue of the commission of the offenses alleged in Counts 2 and 3 of the Indictment, **TIMMY G. ROBINSON, JR.** shall forfeit to the United States any and all property, real or personal, involved in the violations of 18 U.S.C. § 1957 and any property traceable to such property. Any and all interest that **TIMMY G. ROBINSON, JR.** has in this property is vested in and forfeited to the United States pursuant to 18 U.S.C. § 982(a)(1).

3. The property to be forfeited includes, but is not limited to, the following:

**MONEY JUDGMENT:**
A forfeiture money judgment in the amount of proceeds obtained by the Defendant as a result of the fraud offense and/or in the amount involved in the money-laundering offenses.

4. If any of the property listed above, as a result of any act or omission of the Defendant, (A) cannot be located upon the exercise of due diligence; (B) has been transferred

or sold to, or deposited with, a third party; (C) has been placed beyond the jurisdiction of the court, (D) has been substantially diminished in value; or (E) has been commingled with other property which cannot be divided without difficulty, the United States shall be entitled to forfeit substitute property pursuant to 21 U.S.C. § 853(p).

**A TRUE BILL** [redacted]

**FOREPERSON**

**JASON D. PARMAN**
**FIRST ASSISTANT UNITED STATES ATTORNEY**

**PAUL McCAFFREY**
**ASSISTANT UNITED STATES ATTORNEY**

# PENALTIES

| | |
|---|---|
| **COUNT 1:** | Not more than 20 years imprisonment, a fine of $250,000 or twice the gross gain or loss, whichever is greater, and 3 years supervised release. |
| **COUNTS 2-3:** | Not more than 10 years imprisonment, a fine of $250,000, and 3 years supervised release. |
| **PLUS:** | Mandatory special assessment of $100 per count. |
| **PLUS:** | Forfeiture, as alleged. |
| **PLUS:** | Restitution, if applicable. |